# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN INSTITUTIONAL PARTNERS, LLC, ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C. A. No. 10-489-LPS |
| | : | |
| FAIRSTAR RESOURCES LTD., and GOLDLAW PTY LTD. | : | |
| | : | |
| Defendants. | : | |

Theodore Allan Kittila, Esquire of ELLIOT GREENLEAF, Wilmington, Delaware.

Counsel for Plaintiffs.

David E. Wilks, Esquire of WILKS, LUKOFF & BRACEGIRDLE, LLC, Wilmington, Delaware

Counsel for Defendants.

## MEMORANDUM OPINION

March 31, 2011
Wilmington, Delaware.

Stark, District Judge:

Pending before the Court is the Motion to Dismiss or Transfer Venue filed by defendants Fairstar Resources LTD ("Fairstar") and Goldlaw PTY, LTD ("Goldlaw") (collectively, "Defendants"). (D.I. 4) Plaintiffs American Institutional Partners, LLC ("AIP"), AIP Lending, LLC ("Lending"), AIP Resort Development, LLC ("AIP RD"), Peninsula Advisors, LLC ("Peninsula"), and Mark Robbins ("Robbins") (collectively, "Plaintiffs") oppose the motion. (D.I. 7) For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion.

## I.    BACKGROUND

### A.    The Parties

AIP, Lending, Peninsula, and AIP RD are limited liability companies organized under the laws of Delaware. (Am. Coml. ¶ 3-6) AIP is the holder of 100% of the membership interest in and the managing member of Lending, and also is the holder of 55% of the membership interest in and manager of AIP RD. (*Id.* ¶¶ 3, 16) Robbins is the manager of AIP, holder of 100% of the membership interest in and the managing member of Cavalion Group LLC ("Cavalion") – a Delaware limited liability company which holds 100% of the membership interest in Peninsula – and former owner of 49% of the membership interest in and current manager of Seven Investments LLC, a Utah LLC which, in turn, holds 100% of the membership interests in AIP. (*Id.* ¶¶ 7, 14)

Fairstar is a diversified exploration company organized under the laws of Australia, with its principal place of business in Osborne Park, Western Australia. (D.I. 4 at 9; Am. Compl. ¶ 8) Goldlaw is a corporation also organized under the laws of Australia, with its principal place of

1

business in Osborne Park, Western Australia. (D.I. 4 at 9) Plaintiffs allege that Goldlaw is controlled by Fairstar. (Am. Compl. ¶ 9) Fairstar and Goldlaw are judgment creditors of AIP, AIP Lending, and Robbins. (D.I. 4 Ex. B ¶ 2)

**B.    Out-of-State Proceedings**

This dispute stems from litigation in a Utah state court. Defendants brought an action in the Third Judicial District of Utah against AIP, Lending, and Robbins ("the Utah Action"), in which Defendants prevailed.[1] The Utah court entered judgment for Defendants in the amount of $2,296,651.38 and, upon Defendants' request, issued numerous charging orders over various corporate interests held by Robbins.[2] (D.I. 4 at 13; Am. Compl. Ex. C)[3] The orders charge the various companies with payment of the unsatisfied judgment plus interest, attorney fees, and costs, as well as order the foreclosure and constable sale of the corporate interests to satisfy the judgment. (D.I. 4 Ex. A; D.I. 7 Ex. B) The Utah court specified the constable sales would result in payment to Defendants' counsel in the Utah Action, and buyers would acquire all rights in a purchased company if AIP, Lending, or Robbins was the company's sole member. (*Id.*)

The record contains three objections filed by AIP, Lending, and Robbins to some of these charging orders, dated March 18, 2009, April 2, 2009, and May 22, 2009, respectively. (D.I. 4 Ex. F) In all three, AIP, Lending, and Robbins raised, among other things, the same

---

[1]The Utah Action is captioned *Fairstar Resources Ltd. and Goldlaw Pty. Ltd. v. American Institutional Partners, LLC, AIP Lending, LLC, and Mark Robbins*, Civil No. 080916464.

[2]The record contains thirty charging orders. (D.I. 4 Ex. A; D.I. 7 Ex. B) Neither party specifies the total number of charging orders entered by the Utah court.

[3]The Complaint in this action appears in the record only as an attachment to Defendants' Motion to Dismiss or Transfer. (D.I. 4 Ex. A) The Court, therefore, will cite to the Complaint in this manner, with no reference to a specific docket item number.

contention: that Delaware law applies to the charging proceedings because the charged corporations are Delaware entities. (*Id.*) AIP, Lending, and Robbins also filed a motion on May 16, 2010 for stay of the constable sales pending resolution of the instant action. (D.I. 4 Ex. G) The Utah court issued three orders in response. The first is dated April 16, 2009 ("the April 16 Order") and denied objections to the constable sale of Peninsula. (D.I. 4 Ex. E) The court stated "that Utah law applies to all execution proceedings in this matter, including the foreclosure of a member's interest in a limited liability [company], whether such company is domestic or foreign." (*Id.*) In the second, dated April 23, 2009 ("the April 23 Order"), the court summarily denied an objection to the sale of interests in Cavalion. (*Id.*) Finally, in a June 4, 2010 order ("the June 4 Order"), the Utah court denied a motion to stay the pending constable sales until the resolution of the instant action, finding that the court had already ruled on arguments raised by AIP, Lending, and Robbins, including the assertion that Delaware law controlled the proceedings. (D.I. 4 Ex. H)

A series of related litigations are also taking place in other states concerning the sale of a Utah ski resort known as The Canyons ("the Canyons Actions"). (Am. Compl. ¶ 17) Peninsula has been involved in several of these actions, including one in the Colorado state courts ("the Colorado Action").[4] (D.I. 7 at 2) Fairstar and Goldlaw are not parties to the Canyons Actions. (D.I. 4 at 6) Plaintiffs, however, assert that Defendants have taken control of Peninsula's actions in the Colorado Action, going so far as to sue Robbins. (D.I. 7 at 4)

---

[4]The Colorado Action is captioned *Vail Resorts, Inc. v. Peninsula Advisors*, Case No. 07 CV 7264. (D.I. 7 at 2)

## C. **Procedural History**

Plaintiffs filed suit in the Delaware Court of Chancery on May 14, 2010, seeking a declaratory judgment that Defendants' foreclosures upon Plaintiffs' membership interests in eight Delaware limited liability companies ("the Subject LLCs"),[5] which took place in Utah pursuant to a Utah court's charging orders, are invalid under Delaware law, and a declaration of the identity of the members and managers of the Subject LLCs. (Am. Compl. ¶¶ 25-28, 34-37) Plaintiffs also requested an injunction to prevent Defendants from obtaining confidential and privileged documents through assertion of membership and managerial interests in the Subject LLCs. (*Id.* ¶¶ 2, 30-32) Defendants removed the action to this Court on June 4, 2010. (D.I. 2) Defendants filed their Motion to Dismiss or Transfer Venue on July 13, 2010. (D.I. 4) Plaintiffs filed their Opposition on August 12, 2010, and Defendants filed their Reply on August 25, 2010.

Plaintiffs also filed a Motion for a Temporary Restraining Order and Preliminary Injunction on August 24, 2010, on which it requested to be heard. (D.I. 10) The Court held a teleconference on the emergency motion on August 26, 2010, during which the Court denied the motion. This ruling was memorialized in a written Order issued on August 30, 2010. (D.I. 14)

The Court held oral argument on the motion to dismiss or transfer on November 5, 2010. *See* Hr'g Tr., November 5, 2010 (D.I. 15) (hereinafter "Tr.").

## D. **The Parties' Contentions**

By their motion, Defendants seek dismissal of the complaint on the grounds that: (1) pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court lacks personal jurisdiction

---

[5]The eight Subject LLCs are AIP, AIP Lending, AIP RD, Peninsula, Cavalion, Smarthedge, LLC, Talisker Canyons Acquisition Co., LLC, and Pelican Equity, LLC. (Am. Compl. ¶ 21)

over them because the Delaware implied consent statute, 6 Del. C. § 18-109(a) ("the Implied

Consent Statute"), is inapplicable, and exercising personal jurisdiction would fail to comport

with Due Process; (2) pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint fails

to state a claim on which relief can be granted because the *Rooker-Feldman* doctrine precludes

this Court from considering Plaintiffs' claims; and (3) pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Complaint fails to state a claim on which relief can be granted because,

under the doctrine of res judicata, a decision by a Utah state court bars Plaintiffs' claims. (D.I. 4

at 4-9, 10-11, 15-16) In the alternative, Defendants seek a transfer of venue pursuant to 28

U.S.C. § 1404(a) to the United States District Court for the District of Utah. (D.I. 4 at 17-20)

Plaintiffs respond that Defendants are subject to personal jurisdiction under the Implied

Consent Statute and that Defendants have minimum contacts with Delaware, making the exercise

of personal jurisdiction proper under the Due Process Clause. (D.I. 7 at 6-11) They argue, in the

alternative, that this Court has jurisdiction pursuant to 6 Del. C. § 18-110(a), which gives

Delaware courts jurisdiction to determine who is entitled to serve as a manager of a Delaware

limited liability company. (*Id.* at 11-14) They also contend that neither res judicata nor the

*Rooker-Feldman* doctrine bar their claims. (*Id.* at 16-22) Finally, Plaintiffs assert that a transfer

of venue to Utah is inappropriate. (*Id.* at 23-24)

## II.  **LEGAL STANDARDS**

### A.  **Motion to Dismiss Pursuant to Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks

personal jurisdiction over the defendant. Determining the existence of personal jurisdiction

requires a two-part analysis. First, the Court analyzes the long-arm statute of the state in which

the Court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the Court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share*, 735 F.2d at 67 n.9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence.").

If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Conner v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion

to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

7

for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### C.    Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

Under appropriate circumstances, transfer of a case from one federal court to another is authorized by 28 U.S.C. § 1404(a). Section 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of demonstrating that such a transfer is appropriate rests with the moving party. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In evaluating such a motion, courts consider a nonexclusive list of six private factors and six public factors articulated in *Jumara*:

(1) plaintiff's forum preference as manifested in the original choice;

(2) the defendant's preference;

(3) whether the claim arose elsewhere;

(4) the convenience of the parties as indicated by their relative physical and financial condition;

(5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;

(6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum);

(7) the enforceability of the judgment;

(8) practical considerations that could make the trial easy, expeditious, or inexpensive;

(9) the relative administrative difficulty in the two fora resulting from court congestion;

(10) the local interest in deciding local controversies at home;

(11) the public policies of the fora; and

(12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

In considering a motion to transfer venue and determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum," it bears emphasis that "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879. Hence, "unless the balance of convenience of the parties is

strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted). "Because a plaintiff's choice of forum is accorded substantial weight and venue is transferred only if the defendant truly is regional (as opposed to national) in character, a defendant has the burden of establishing that the balance of convenience of the parties and witnesses strongly favors the defendant. Therefore, defendants [seeking transfer] must prove that litigating in Delaware would pose a unique or unusual burden on their operations." *L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

Plaintiffs bear the burden of adducing facts which, at a minimum, "establish with reasonable particularity" that personal jurisdiction exists over Defendants. *See Provident Nat'l Bank*, 819 F.2d at 437. Plaintiffs assert two bases for exercising personal jurisdiction over Defendants. First, Plaintiffs rely on the Implied Consent Statute. Second, they rely on 6 Del. C. § 18-110(a), a provision that gives Delaware courts jurisdiction to determine who is entitled to serve as manager of a Delaware limited liability corporation. Under either basis, the exercise of personal jurisdiction must also comport with the Due Process Clause of the Constitution. *See IMO Indus.*, 155 F.3d at 259; *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *5 (Del. Ch. Feb. 26, 2010) ("Even if one is served pursuant to § 18-109(a), personal jurisdiction must still be consistent with due process."). This requirement is met, Plaintiffs advert, because Defendants have the requisite minimum contacts with Delaware.

The Court concludes that Plaintiffs have made an adequate showing under the Implied

10

Consent Statute to justify the exercise of personal jurisdiction over Fairstar, and that with respect

to Fairstar the requirements of Due Process are satisfied. However, no adequate showing has

been made for Goldlaw. Also, asserting personal jurisdiction over either Defendant pursuant to

§ 18-110(a) would be inappropriate.

### 1.     Implied Consent Statute

Delaware's Implied Consent Statute provides a basis for exercising personal jurisdiction

over an out-of-state citizen who is a manager, or participates in the management, of a Delaware

limited liability company. The provision states:

> (a) A manager . . . of a limited liability company may be served
> with process in the manner prescribed in this section in all civil
> actions or proceedings brought in the State of Delaware involving
> or relating to the business of the limited liability company . . .
> whether or not the manager . . . is a manager . . . at the time suit is
> commenced. . . . Such service as a manager . . . shall signify the
> consent of such manager . . . that any process when so served shall
> be of the same legal force and validity as if served upon such
> manager . . . within the State of Delaware . . . . As used in this
> subsection (a) . . . , the term "manager" refers (i) to a person who is
> a manager as defined in § 18-101(10) of this title and (ii) to a
> person, whether or not a member of a limited liability company,
> who, although not a manager as defined in § 18-101(10) of this
> title, *participates materially in the management of the limited
> liability company; provided however, that the power to elect or
> otherwise select or to participate in the election or selection of a
> person to be a manager as defined in § 18-101(10) of this title
> shall not, by itself, constitute participation in the management of
> the limited liability company.*

6 Del. C. § 18-109 (emphasis added).

Defendants argue that the Implied Consent Statute is inapplicable because the Complaint

does not involve or relate to the business of the Subject LLCs.[6] (D.I. 4 at 4) Defendants emphasize that, while the complaint alleges they are ***purporting*** to act as managers, the Implied Consent Statute applies only to ***actual*** managers or entities ***actually*** participating in management. (*Id.*) If Plaintiffs are correct (i.e., Defendants are wrongfully exercising management rights), Defendants argue, the basis for jurisdiction under the Implied Consent Statute (material participation in management) "falls out" of the case, making jurisdiction improper. (*Id.*)

Defendants also assert that Plaintiffs' factual claims are insufficient to establish jurisdiction under the Implied Consent Statute. In the Complaint, Plaintiffs assert that Defendants have acted as managers of Peninsula, one of the Subject LLCs, in two ways. First, Defendants' counsel in Utah – who does not represent them here – sent a letter to Peninsula's former counsel in Utah – who does not represent Peninsula here – on April 20, 2010, demanding that the latter turn over all files related to its representation of Peninsula.[7] (D.I. 7 Ex. A) Second,

---

[6]This argument is unpersuasive. "An action involves or relates to the business of an LLC if: (1) the allegations against the manager focus centrally on his rights, duties and obligations as a manager of a Delaware LLC; (2) the resolution of this matter is inextricably bound up in Delaware law; and (3) Delaware has a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions." *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *8 (Del. Ch. Dec. 1, 2009) (internal quotation marks omitted). A dispute regarding the identity of the proper members and managers of an LLC clearly relates to the business of that LLC. *See Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *12 (Del. Ch. Mar. 31, 2003) ("Clearly, the question of whether [one of the defendants] was properly removed as a manager, CEO, and President of the Companies relates to the business of the Companies. . . . [T]he issue as to who owns what part of [the Companies] . . . is related in some respect to the management disputes underlying this case – i.e., it relates to the business of the Companies. . . . In view of the importance of these issues to the capital structure and control of closely-held Delaware LLCs, they obviously relate to the business of those Companies and fall within the literal terms of § 18-109.").

[7]This demand was renewed in an August 16, 2010 letter, spurring Plaintiffs to file the motion for a temporary restraining order and preliminary injunction discussed above in

Plaintiffs allege that Defendants, purportedly acting on behalf of Peninsula, have made filings in the Colorado Action reversing Peninsula's prior litigating positions. (*Id.* ¶ 19)

Defendants contend that the April 20, 2010 letter was not sent on Defendants' behalf and does not represent Defendants as Peninsula managers. (D.I. 4 at 5) Defendants also emphasize that they never executed on any membership interest in Peninsula, although Fairstar admits to owning 100% of the membership interest in Cavalion, which is the sole member of Peninsula and which appointed Peninsula's sole manager. (*Id.* at 6) Given what Defendants characterize as "limited activity" related to Peninsula, Defendants assert they could not have orchestrated Peninsula's reversal of positions in the Colorado Action. (*Id.* at 7)

In response, Plaintiffs argue that the Implied Consent Statute applies when a defendant participates materially in management, whether or not the participation is proper. (D.I. 11 at 7) The Court agrees. The statute indicates that a manager is subject to personal jurisdiction "whether or not the manager . . . is a manager . . . at the time suit is commenced." 6 Del. C. § 18-109(a). Undoubtedly, this provision contemplates the situation where a former manager, who is no longer a manager at the start of the suit, is being sued. However, the language also encompasses actions against purported managers who may never have been actual managers. At this stage, the Court need not decide the propriety of Defendants' alleged assertion of managerial interests. Instead, the Court is merely concluding that Defendants' alleged assertion of managerial interests is sufficient to justify haling Defendants into a Delaware court, as Plaintiffs have established with reasonable particularity that Defendants materially participated in management of the Subject LLCs, making personal jurisdiction proper under the Implied

Section I.C.

13

Consent Statute.

Plaintiffs rely on four factual allegations to establish material participation in management: (1) Fairstar's assertion of a 100% ownership interest in Cavalion, which owns Peninsula, and the accompanying power to appoint managers of both entities; (2) Defendants' Utah counsel's demand for Peninsula documents; (3) Defendants' alleged court filings on behalf of Peninsula in the Colorado Action; and (4) Fairstar's filings in a bankruptcy proceeding in the United States Bankruptcy Court for the District of Utah (the "Utah Bankruptcy Proceeding").[8] Fairstar's asserted ownership interest[9] is a sufficient basis for jurisdiction only if the ownership interest, or the accompanying power to appoint managers, equates to material participation in management. Generally, an ownership interest does not (by itself) imply managerial control – a point the statute makes explicitly. *See* 6 Del. C. § 18-109(a); *see also Fisk Ventures, LLC v. Segal*, 2008 WL 1961156 (Del. Ch. May 7, 2008) (finding no material participation in management where member had right to appoint two of five managers, and entity he owned was member with power to appoint third manager); *Nolu Plastics, Inc. v. Ledingham*, 2005 WL 5654418 (Del. Ch. Dec. 17, 2005) (finding no material participation in management where defendant had right to elect manager of LLC); *Palmer v. Moffat*, 2001 WL 1221749 (Del. Super.

---

[8]The Utah Bankruptcy Proceeding and the motion brought by Fairstar in that proceeding were first brought to the attention of the Court at the hearing held on November 5, 2010. (*See* Tr. at 18-20) Defendants did not object to the Court's consideration of this evidence. (*See id.* at 44-45)

[9]Defendants emphasize, at great length, that Fairstar has acquired a membership interest in Cavalion, but not in Peninsula. (D.I. 11 at 5-8) While it is true Cavalion is not a party to this action, Cavalion is one of the Subject LLCs for which Plaintiffs request a declaration. (Am. Compl. ¶ 21) Therefore, if Plaintiffs establish that Defendants participated in Cavalion's management, personal jurisdiction is proper under the Implied Consent Statute.

Ct. Oct. 10, 2001) (finding three members were not managers even though members were authorized to appoint majority of managers). But Defendants have done more than just own Cavalion and, through it, Peninsula. Here, Fairstar, as sole owner of Cavalion, appointed Cavalion's sole manager. (D.I. 4 Ex. C ¶ 4) Further, Cavalion, which wholly owns Peninsula, has appointed Peninsula's sole manager. (*Id.*) The only case addressing the issue of material participation in management in the context of a sole member/sole manager LLC – which, as best as this Court can discern from the record, is the situation here – is a ruling from this District, in which personal jurisdiction was exercised. *See Christ v. Cormick*, 2007 WL 2022053 (D. Del. July 10, 2007) (holding that defendant materially participated in management by forming LLC in Delaware and serving as sole initial member).[10] Although an entity that wholly owns an LLC and appoints its sole manager likely participates materially in its management, the corporate structures of Cavalion and Peninsula are not clearly established in record.

Plaintiffs offer more to justify the exercise of personal jurisdiction. Plaintiffs allege facts that support a finding of material participation in management by Fairstar (e.g., the allegation that Defendants directed the mailing of the demand letter and the Colorado Action filings that switched Peninsula's litigating positions). Defendants' Utah counsel, Mr. David Walquist, is an employee of Kirton & McConkie, the law firm that made the demand for the Peninsula documents. (D.I. 4 Ex. E, Ex. H) At this stage, the Court must construe disputed facts in favor of Plaintiffs and, thus, draw the inference that Fairstar retained Kirton & McConkie to represent

---

[10]Plaintiffs also argue that there was an interim period prior to the appointment of the Cavalion manager when Fairstar served as the corporation's sole member and manager. (D.I. 7 at 9) This interim period, Plaintiffs assert, is sufficient to warrant jurisdiction under the Implied Consent Statute. (*Id.*) Given the Court's above finding, the Court need not address this unestablished interim period.

its newly acquired entities, Cavalion and Peninsula (which it owns through Cavalion). *See Metcalfe*, 566 F.3d at 330 ("[A] court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."). Plaintiffs also point to action by Fairstar in the Utah Bankruptcy Proceeding. (*See* Tr. at 18-20) Fairstar filed a motion in that proceeding in which it asserted that it acquired all membership interest in AIP RD and appointed AIP RD's manager. *See* Memorandum in Support of Ex Parte Joint Motion of Fairstar Resources Ltd. and Petitioning Creditors AD Capital, LLC and Lockhart & Munroe for Order Pursuant to Bankruptcy Rule 1007(d) Directing Moving Parties to Prepare and File the Debtor's Statements and Schedules by August 13, 2010 at 2, *In re AIP Resort Dev. LLC*, Bankruptcy Case No. 10-25027 (Bankr. D. Utah July 15, 2010). Notably, Fairstar stated that AIP RD failed to make a required filing because ***Fairstar*** – not AIP RD – lacked the necessary information to prepare the filing. *Id.* at 4 ("The Debtor's Statements and Schedules and the List of 20 Largest Creditors were not filed by the Debtor [AIP RD] within the deadlines outlined in Bankruptcy Rule 1007 because the financial information needed to prepare the Statements and Schedules and this List was not in the possession or control of Fairstar, which now holds all of the membership interests in the Debtor [AIP RD]."). Assuming the document demand and Colorado Action filings were made at the behest of Fairstar, along with Fairstar's 100% ownership interest in Cavalion and the accompanying authority to designate its sole manager, as well as Fairstar's representations in the Utah Bankruptcy Proceeding, the Court finds the exercise of personal jurisdiction over Fairstar proper.

With respect to Goldstar, however, the only basis Plaintiffs assert for exercising personal jurisdiction over Goldlaw is an unsubstantiated contention that Fairstar controls Goldlaw. (Am.

16

Compl. ¶ 9) This allegation is insufficient to support the inference that Goldlaw was behind the document demand or court filings in the Colorado Action and the Utah Bankruptcy Proceeding. The inferential gap is simply too large. Plaintiffs, therefore, have failed to justify the exercise of personal jurisdiction over Goldlaw under the Implied Consent Statute.

### 2.     <u>6 Del. C. § 18-110(a)</u>

Plaintiffs argue, in the alternative, that jurisdiction is proper under 6 Del. C. § 18-110(a), a provision that grants Delaware courts jurisdiction to determine the rightful managers of a Delaware limited liability company. (D.I. 7 at 11) If personal jurisdiction over Defendants is lacking, Plaintiffs ask that the Court drop them from the case, realign the parties, and exercise jurisdiction under § 18-110(a). (*Id.* at 12) This realignment would be much more extensive than the realignment that occurred in the authorities Plaintiffs cite. Plaintiffs want Defendants dropped completely from the case and AIP, AIP Lending, AIP RD, and Peninsula realigned as defendants, turning the action into a dispute between Robbins and the LLCs over his ouster as member and manager. This does more than realign the parties; it changes the entire theory of the case.

The three cases Plaintiffs cite involve realigning parties to determine if there is complete diversity of citizenship, allowing the federal courts to assess whether they had subject matter jurisdiction. *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941); *Employers Ins. v. Crown Cork & Seal Co.*, 905 F.2d 42, 46 (3d Cir. 1990); *Polak v. Kobayashi*, 2005 WL 2008306 (D. Del. Aug. 22, 2005). The Court finds these cases to be inapposite. Given the case Plaintiffs chose to file, the changes Plaintiffs request simply ask too much.

17

### 3. Due Process Analysis

Fairstar asserts that it lacks minimum contacts with Delaware. (D.I. 4 at 8) The accused conduct, Fairstar contends, was the execution of the Utah judgment, which occurred in Utah and was not action directed at Delaware. (*Id.*) The only ties Fairstar has to Delaware are the membership interests it gained through the foreclosure sales. (*Id.*) Fairstar emphasizes that it is an Australian company, which has transacted no business in Delaware and has no offices, employees, telephones numbers, or bank accounts here. (*Id.*) Plaintiffs respond that Fairstar purposefully availed itself of Delaware law by acquiring the management interest in Delaware LLCs through the foreclosure sales. (D.I. 7 at 10) The Court agrees with Plaintiffs.

Fairstar, by foreclosing on Delaware LLCs and taking ownership rights in them, has purposefully availed itself of Delaware law. Fairstar cannot be surprised it has been haled into a Delaware court for a dispute over the governance of these Delaware LLCs. *See Cornerstone Techs. v. Conrad*, 2003 WL 1787959, at *13 (Del. Ch. Mar. 31, 2003) (holding that due process requirements were met because defendant purposefully availed himself of Delaware law and cannot be surprised to face lawsuit in Delaware). There is nothing unfair or unjust about exercising personal jurisdiction over Fairstar. *See PT China*, 2010 WL 761145, at *8 n.44 (finding that exercise of personal jurisdiction over Chinese individual comported with due process, fairness, and substantial justice because individual submitted himself to jurisdiction by taking management position in Delaware LLC, and claims asserted related to his obligations as manager). Since Plaintiffs' claims involve the management rights of Peninsula, among other Delaware LLCs, they relate to Fairstar's obligation as a member who participates materially in management. Due process requirements are, thus, satisfied. *See id.* (finding due process

requirements satisfied for specific claim because it pertained to defendant's rights, duties, and obligations as manager of Delaware LLC); *Palmer*, 2001 WL 1221749, at *4 ("The Court finds that [the defendant] could reasonably have anticipated being subject to Delaware jurisdiction under these circumstances to answer for his actions as a manager and that exercise of jurisdiction would not offend traditional notions of fair play and substantial justice."); *Assist Stock Mgmt. LLC v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000) (finding exercise of personal jurisdiction proper under Due Process Clause "because: (1) the allegations against [defendant] Rosheim focus centrally on his rights, duties and obligations as a manager of a Delaware LLC; (2) the resolution of this matter is inextricably bound up in Delaware law; and
(3) Delaware has a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions") (internal quotation marks omitted).

### B. <u>Failure to State a Claim</u>

#### 1. <u>Res Judicata</u>

When deciding whether a party's claim is precluded by a prior state court judgment, this Court must give the judgment "the same preclusive effects" that a court from "the state in which the judgment was entered[] would." *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 548 (3d Cir 2006). The Court, therefore, applies the law of Utah, the state where the allegedly preclusive orders were issued. In Utah, for a claim to be precluded by a prior ruling, (1) "both cases must involve the same parties or their privies;" (2) "the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action;" and (3) "the first suit must have resulted in a final judgment on the merits."

19

*Snyder v. Murray City Corp.,* 73 P.3d 325, 332 (Utah 2003).

Defendants argue these three elements are met. (D.I. 4 at 15-17) First, AIP, AIP Lending, Robbins, Fairstar, and Goldlaw were all parties to the Utah Action; and AIP RD and Peninsula, Defendants assert, are privies of AIP and Robbins, as they have identical legal interests. (*Id.* at 15) Second, Defendants contend that Plaintiffs raised the same issue in the Utah Action: whether Delaware law controlled and prohibited the constable sales. (*Id.* at 16) Finally, the April 16 Order and the April 23 Order were substantive rulings qualifying as final judgments on the merits. (*Id.* at 17)

Plaintiffs counter that Peninsula and AIP RD were neither parties nor privies to the Utah Action, relying on the bedrock principle of a corporation's separate legal existence. (D.I. 7 at 18) Defendants respond that the parties have identical interests and represent the same legal rights, making them privies under Utah law. (D.I. 11 at 15) Plaintiffs also contend that the April 16 Order has no bearing on this litigation since it denied an objection to a charging order on Peninsula, but Defendants never executed on that order. (D.I. 7 at 16) Defendants argue that the April 16 Order extended beyond the charge on Peninsula; the Utah court ruled that Utah law, not Delaware law, applied to all execution proceedings in the Utah Action. (D.I. 11 at 12) Even assuming Utah law – specifically Utah Code Ann. 1953 § 48-2c-1103(6) – controls, Plaintiffs advert, Defendants' assertion of control over Peninsula is still improper. (D.I. 7 at 17)

Finally, Plaintiffs argue the claims here are broader than those resolved in the April 16 Order and the April 23 Order. (*Id.* at 19) Those orders decided whether the constable sales in Utah should proceed. Here, Plaintiffs want a declaration of the proper members and managers of the Subject LLCs subsequent to those sales, and a ruling that Defendants have no right to demand

20

the production of Peninsula files. (*Id.*)

In the June 4 Order, the Utah court denied a stay of the foreclosure sales pending resolution of this action. (*Id.* at 20) Plaintiffs assert this ruling in no way validates the foreclosures. (*Id.*) Defendants disagree, pointing to the Utah court's statement that it was denying the motion because the court had "already ruled on the issues presented," reincorporating the prior ruling that Utah law controls, under which the charging orders are proper. (D.I. 11 at 13)

Plaintiffs do not challenge the finality of the April 16 Order, April 20 Order, or June 4 Order. (D.I. 7 at 15-21). Only the first and second elements of claim preclusion are in dispute.

### a. **Same parties or privies**

Under Utah law, a privy is "a person so identified in interest with another that he represents the same legal right." *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978). "Thus, privity depends mostly on the parties' relationship to the subject matter of the litigation." *Press Pub. Ltd. v. Matol Botanical Intern. Ltd.*, 37 P.3d 1121, 1128 (Utah 2001) (internal citations omitted). In *Press Publishing*, the Supreme Court of Utah found that affiliates and subsidiaries of an entity, Matol Botanical International Ltd. ("MBI"), were its privies because, in a prior bankruptcy proceeding, the sister corporations had defended MBI in their affiliate capacity. Also, the causes of action in the earlier bankruptcy proceeding "stem[med] from the same alleged conduct, obligations, and legal theory." *Id.* But in a more recent case, the Utah Supreme Court emphasized that, to comport with Due Process requirements, a finding of privity for claim preclusion – as opposed to issue preclusion – between corporate affiliates requires "additional findings establishing the appropriateness of the transfer" of judgment. *See Brigham Young Univ.*

21

*v. Tremco Consultants, Inc.*, 110 P.3d 678, 686-88 (Utah 2005). The parties must have a relationship that "is sufficiently close to justify preclusion," which cannot be based on corporate affiliation alone. *Id.* at 688. A theory such as alter ego or veil piercing must be established to ensure the "substantive precepts of corporate law" are respected. *Id.* ("In cases involving liability between and among corporations, findings of alter ego or a piercing of the corporate veil, for example, could suffice to establish the appropriateness of extending or transferring the liability of one corporate entity to another. . . . Absent such a finding, however, liability cannot be imposed upon the second entity without displacing substantive precepts of corporate law.").

Although language in *Press Publishing*, which Defendants cite (D.I. 11 at 15), implies a finding of privity was made based on an entity's status as an affiliate, putting it at odds with *BYU*, an examination of the facts there reveals no tension. MBI originally filed suit against Press Publishing Ltd. ("Press") for breach of contract. Press responded with counterclaims of misappropriation against MBI and various affiliates and subsidiaries. *Press Publishing*, 37 P.3d at 1123. As part of its misappropriation claims, Press argued that the counterclaim-defendants acted "in concert and as agents and alter egos" to carry out a scheme to destroy Press, and there was no distinctness among any of them. *Id.* at 1124. MBI then dropped its breach of contract claim, leaving only Press' counterclaims, and the MBI affiliates moved to dismiss the counterclaims as being barred by a prior bankruptcy ruling. *Id.* at 1126. MBI was a party to that bankruptcy proceeding and the affiliates argued they were MBI's privies. *Id.* In response, Press argued the affiliates were not alter egos of MBI, the complete opposite of its prior assertion. *Id.* The Supreme Court of Utah held that the affiliates were privies because of their status as sister corporations, their defense of MBI (as affiliates) in one of the bankruptcy proceedings, and the

fact that the two causes of action arose from the same conduct, obligations, and legal theory, all of which combined to create an identity of legal interests between the parties. *Id.* at 1128. The court emphasized that MBI's "attempt to retract its previous allegation of privity" based on an alter-ego theory was disingenuous, indicating it was holding MBI to its earlier position. *Id.* The *Press Publishing* ruling, therefore, involved an assertion (and perhaps establishment) of an alter ego theory, meeting the requirement clarified in *BYU.*

Here, Defendants raise no basis to disregard the separate legal existence of AIP RD and Peninsula, and in fact argue the separate existence is "beside the point." (D.I. 11 at 15) They merely rely on the ownership interests the parties to the Utah Action have in AIP RD and Peninsula, citing authority from the Tenth Circuit and the Southern District of New York. (*Id.* at 16) But in Utah "additional findings establishing the appropriateness of the transfer" of judgment are required, which Defendants have failed to present. The claims brought by AIP RD and Peninsula, therefore, are not barred.

Since the remaining Plaintiffs were parties to the Utah Action, the Court must turn to the second requirement for claim preclusion with regard to their claims.

### b. Claim presented, or should have been presented, in the first suit

In Utah, for purposes of claim preclusion, "[c]laims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction." *Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 221 P.3d 194, 203 (Utah 2009). The Utah Supreme Court stated in *Mack* that it has "moved toward the transactional theory of claim preclusion espoused by the Restatement (Second) [of Judgments]" and moved away from requiring the causes of action to

23

"rest on the same state of facts" or that the necessary evidence be of the "same kind or character."[11] *Id.* In *Press Publishing*, the same claims were involved because the causes of action "stem[ed] from the same alleged conduct, obligations, and legal theory" as those in the prior proceeding. 37 P.3d at 1128.

This action and the Utah Action involve one transaction: the constable sales of the Delaware LLCs. In the Utah Action, AIP, Lending, and Robbins challenged the future sales preemptively through objections that resulted in the April 16 Order and April 20 Order. Here, these entities challenge the consummated sales after-the-fact by requesting a declaration that Defendants do not own any interest in the Subject LLCs, are not entitled to any property owned by the Subject LLCs, and are not members or managers of the Subject LLCs. (Am. Compl. ¶¶ A, B, D, E) Granting relief requires a finding that the sales were invalid. The challenge is based on Delaware law, making it identical to the challenge raised in the Utah Action. The Utah court resolved this claim in the April 16 Order by holding that Utah law controlled; this holding was later incorporated into the June 4 Order.[12]

Plaintiffs also challenge acts by Defendants which Plaintiffs argue are attempts to control Peninsula (the document demand, the Colorado Action filings, and the Utah Bankruptcy

---

[11]Plaintiffs rely on the "sameness of evidence" rationale, arguing Defendants have attempted to control Peninsula only after the Utah rulings, and Plaintiffs could not have raised claims based on these future facts. (D.I. 11 at 20) In making this argument, Plaintiffs rely on *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214 (Utah 2000). But, in *Mack*, the Utah Supreme Court explained that the holding in *Macris* turned on a transactional theory; there was no preclusion because the claims arose from different transactions. *See Mack*, 221 P.3d at 203-04.

[12]Plaintiffs emphasize the fact that the April 16 Order was a challenge to a charging order that was never executed on, but the Utah court clearly incorporated its holding there into the June 4 Order, leaving no doubt as to the finality of the holding. (D.I. 4 Ex. H)

Proceeding filing). But they do so by requesting an injunction. To issue the injunction, the Court must find that the foreclosure sales are void. The claim is based, somewhat, on conduct occurring after the Utah rulings, but it is still premised on the same transaction: the constable sales. Plaintiffs argue that even under Utah law, Defendants could gain no managerial rights in Peninsula. (D.I. 7 at 17) Plaintiffs have progressed from challenging the acquisition of membership rights under Delaware law to challenging the acquisition of managerial rights under Utah law. Although this claim was not raised in the Utah Action, it "could and should have been." When Plaintiffs received the unfavorable ruling refusing to stop the sales, they could and should have asked the Utah court for a declaration (as they do here) clarifying the rights Defendants would acquire through the sales. If they had done this, they would have asked a Utah court (not a Delaware court) for a ruling under Utah law.

### 2. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine, by removing subject matter jurisdiction, prevents district courts from reviewing and rejecting state court decisions in federal actions brought by the party that lost in the state forum. *See Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir. 2006). The scope of this doctrine, however, is very narrow. *See id.* ("[T]he [Supreme] Court . . . [has] emphasized the narrow scope of the *Rooker- Feldman* doctrine, holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In fact, "a district court is not divested of subject-matter jurisdiction simply because

25

a party attempts to litigate in federal court a matter previously litigated in state court. *Id.*

Here, Plaintiffs raise issues not presented in the Utah Action (i.e., the challenge under Utah law and the challenge to the demand for Peninsula documents). They request a declaration of corporate rights in the aftermath of the Utah rulings. They do not seek a stay of the sales – the remedy prayed for in Utah – or damages for harm caused by the denial of a stay; this action is not framed as an appeal of the Utah ruling. *See* 18B C. Wright & A. Miller, Federal Practice and Procedure § 4469.1 (2d ed. 2010) ("The most obvious occasions to apply *Rooker-Feldman* principles arise in the occasional actions that are expressly framed as attempted appeals from a state-court judgment to a federal district court."). When, as here, additional claims are asserted in the federal forum, the *Rooker-Feldman* doctrine is no bar, even if the claims contradict a legal conclusion made by the state court. *See Exxon Mobil Corp.*, 544 U.S. at 1527 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.") (internal citations omitted). The *Rooker-Feldman* doctrine is, therefore, inapplicable.

### C.    Transfer of Venue

Since the claims asserted by AIP RD and Peninsula against Fairstar survive the analysis above, the Court must consider Defendants' request to transfer venue to the District of Utah. Defendants' request arises pursuant to 28 U.S.C. § 1404(a), which permits transfer of "any civil action to any other district or division where it might have been brought." Venue is proper in the District of Utah under 28 U.S.C. § 1391(a)(2) because it is the "judicial district in which a substantial part of the events . . . giving rise to the claim occurred," namely, the constable sales.

26

No party contends venue is improper in Delaware. *See* 28 U.S.C. § 1391. Since two proper

venues have been identified, the Court must consider the factors identified by the Third Circuit in

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Having done so, the

Court concludes that Defendants have failed to meet the high burden imposed on them by the law

of this Circuit, which requires a showing that convenience and fairness strongly favor transfer.

Specifically, the Court makes the following findings with respect to each of the *Jumara*

factors. (i) Plaintiffs have clearly manifested their preference for Delaware as a forum by filing

the Amended Complaint in this jurisdiction. (ii) Defendants prefer an alternative forum: the

District of Utah. The Court notes that Defendants are Australian companies with their principal

places of business in Osborne Park, Western Australia. (D.I. 4 at 9) The only tie to Utah the

Court can discern from the record is Defendants' choice to file the Utah Action there, presumably

because that is where AIP and Lending have their principal places of business. (D.I. 4 Ex. B.

¶ 3)[13] This connection is weaker than Defendants' tie to this forum: their asserted ownership

(and possible managerial) interest in various Delaware LLCs. (iii) Plaintiffs' claim did arise in

Utah. The basis for their claims are the foreclosure sales through which Defendants executed on

the Subject LLCs, which occurred in Utah pursuant to Utah law and a Utah court's charging

orders.

(iv) The record contains little information about the physical and financial conditions of

---

[13]Defendants' Utah counsel states in an affidavit attached to Defendants' motion that he "personally entered the Plaintiffs' AIP LLC, AIP Lending, and Peninsula's principal place of business which was located in Utah." (D.I. 4 Ex. B ¶ 3) Plaintiffs do no challenge this assertion.

the parties,[14] and nothing about the convenience of litigating in Utah as opposed to Delaware.

(v) Although some witnesses reside in Utah, there is no indication that any witness would be unavailable in Delaware. The convenience of witnesses is not, therefore, highly pertinent.

(vi) While Defendants assert that documentary evidence is located in Utah, they do not suggest it would be difficult to produce this evidence in Delaware. Hence, these considerations do little to offset the heavy weight afforded to Plaintiffs' choice of forum, as they show no unusual burden presented by litigation in Delaware. *See, e.g., Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004) ("This court . . . has denied motions to transfer venue when the movants were unable to identify documents and witnesses that were unavailable for trial."); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) ("[T]echnological advances have substantially reduced the burden of having to litigate in a distant forum.").

(vii) There is no suggestion that a judgment would be unenforceable in either District.

(viii) Defendants argue that practical considerations such as ease and expense of trial favor transfer to Utah because evidence and witnesses are located there. But shipment and travel costs for proceeding in Delaware are not compared to those for litigating in Utah, providing no indication of the weight this factor should be given.

(ix) Notwithstanding the heavy caseload carried by the judges in this District, and the ongoing judicial vacancy, the Court is not persuaded that administrative difficulties due to court

---

[14]The Court notes that on March 18, 2011, a suggestion of bankruptcy was filed in this case informing the Court that AIP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C § 11, in the United States Bankruptcy Court for the District of Delaware. (D.I. 16)

congestion favor transfer. *See Textron Innovations, Inc. v. The Taro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer.").

(x) Both venues have a local interest in deciding the controversy and (xi) public policy considerations favoring resolution there. Delaware clearly has a substantial interest in resolving lawsuits pertaining to the ownership and control of Delaware LLCs. Also, when Defendants executed on Delaware LLCs, they were fully cognizant of the possibility of being sued here. By taking ownership, Defendants "received the benefits of Delaware incorporation" and cannot now complain that they have been sued here. *See Auto. Techs Int'l, Inc. v. Am. Honda Motor Co. Inc.*, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006). That being said, Utah has a significant local interest also. The Subject LLCs are registered to do business in Utah and have their principal places of business there. This dispute requires an examination of the implications of a Utah court's ruling and constable sales that took place in Utah. Since both Delaware and Utah can assert significant local interests and public policy concerns related with this lawsuit, this factor favors neither venue.

Finally, (xii) a district judge in the District of Utah undoubtedly has more occasion to apply Utah law than a district judge here. But there is no reason to believe that this Court is unable to render an informed ruling under Utah law. Further, application of Delaware law is likely also required, as the action is brought under a provision of Delaware corporate law. Hence, this final factor favors neither venue.

At bottom, this analysis turns on a balance between the first and third factors: the great weight given to the Plaintiffs' choice of forum and the origin of the claim in Utah. The Court

29

concludes that the latter factor does not outweigh the presumption that a case should be litigated in the forum chosen by the plaintiff. Defendants have failed to meet the heavy burden of demonstrating that another forum clearly would be more convenient or otherwise more fair. Therefore, Defendants' motion to transfer venue will be denied.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss or transfer venue is GRANTED IN PART and DENIED IN PART. The claims against defendant Goldstar are dismissed for lack of personal jurisdiction. The claims asserted by AIP, Lending, and Robbins are barred under the doctrine of claim preclusion and, thus, dismissed. Defendants' motion to transfer venue is DENIED. This suit will proceed as an action by AIP RD and Peninsula against Fairstar.